UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TOMMY ALEXANDER,

    Plaintiff,

-vs-                                      Case No.
                                             Hon.

BLACKHAWK RECOVERY AND INVESTIGATIONS, LLC,

    Defendant.

## COMPLAINT & JURY DEMAND

### Jurisdiction

1. This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit resides in Inkster, MI in Wayne County.

4. Blackhawk Recovery and Investigations, LLC, ("Blackhawk Recovery") is a corporation doing business in Michigan.

### Venue

5. The transactions and occurrences which give rise to this action occurred in Wayne County.

6. Venue is proper in the Eastern District of Michigan.

## **General Allegations**

7. On or about February 4, 2009, representatives of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and informed the Plaintiff that they were there to recover a 2006 Chevy Blazer.

8. On or about February 4, 2009, Mr. Alexander explained to the representatives of Blackhawk Recovery that the Blazer was not in Michigan, but rather in Kentucky, where his son was attending college.

9. On or about February 4, 2009, representatives of Blackhawk Recovery demanded that the Plaintiff pay $2,700.00 immediately directly to the representatives of Blackhawk Recovery to be forwarded to Drive Financial.

10. In spite of this attempt to collect money from the Plaintiff, Plaintiff never received any written correspondence from Blackhawk Recovery and, upon information and belief, Blackhawk Recovery did not send any notice pursuant to 15 U.S.C. § 1692g.

11. On or about February 4, 2009, Blackhawk Recovery did not comply with 15 U.S.C. § 1692e(11).

12. On or about February 4, 2009, Plaintiff told the representatives of Blackhawk Recovery that he would provide them with an address in Kentucky where the vehicle was located; in response to this, an employee of Blackhawk Recovery stated, "We know it's here."

13. At that point, the representatives of Blackhawk Recovery left Plaintiff's property.

14. On or about February 5, 2009, different representatives of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and informed the Plaintiff that they were there to recover a 2006 Chevy Blazer.

2

15. On or about February 5, 2009, Plaintiff told the different representatives of Blackhawk Recovery that the 2006 Chevy Blazer was in Kentucky and offered to provide an address; the representatives of Blackhawk Recovery left Plaintiff's property.

16. On or about February 6, 2009 at approximately 7:00 am, the same representatives of Blackhawk Recovery that showed up two days earlier entered on to Plaintiff's property and began banging on Plaintiff's front door so loudly and forcefully that the Plaintiff was sure that his neighbors would be awakened.

17. The representatives of Blackhawk Recovery were pounding on the door so loudly that it was shaking the frame of the door and Plaintiff believed that someone was trying to break the door down.

18. On or about February 6, 2009 at approximately 7:00 am, Plaintiff answered the door and again informed Blachhawk Recovery that the vehicle was in Kentucky.

19. On or about February 6, 2009 at approximately 7:00 am, and in response to being informed that the vehicle was in Kentucky, the agent of Blackhawk Recovery stated, "We know it's here. If I have to get into the garage, I know how to get into the garage."

20. Later, on the same day, Plaintiff came out of his home to find the agents of Blackhawk Recovery trying to break into his garage.

21. Having been discovered breaking into the garage, the agent of Blackhawk Recovery ran to the truck he arrived in and left the property.

22. Mr. Alexander followed the truck and called the Inster police department.

23. On or about February 9, 2009 at approximately 8:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the

3

house shook.

24. On or about February 9, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

25. On or about February 9, 2009 at approximately 8:00 am, when Plaintiff came to get the door, he witnessed one of the agents from Blackhawk Recovery reaching through his mail slot and trying to grab the mail from inside and pull it out the door.

26. One of the agents named, Lanny, yelled, "Tommy Alexander, I know you live here from your mail information."

27. On or about February 9, 2009 at approximately 8:00 am, Plaintiff told the employees of Blackhawk Recovery that they were trespassing and instructed them and everyone from Blackhawk recovery to stay off of his property.

28. On or about February 9, 2009 at approximately 8:00 am, in response to Plaintiff's instruction to get off of his property, the representative of Blackhawk Recovery said, "Fuck you. We know the car's in your garage."

29. On or about February 10, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

30. On or about February 10, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

31. The next day, on or about February 11, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

4

32. On or about February 11, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

33. The next day, on or about February 12, 2009 at approximately 9:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

34. On or about February 12, 2009 at approximately 9:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

35. The next day, on or about February 13, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

36. On or about February 13, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

37. On or about February 17, 2009 at approximately 10:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

38. The next day, on or about February 17, 2009 at approximately 10:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

39. On or about February 19, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

40. The next day, on or about February 19, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

41. On or about February 20, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

42. The next day, on or about February 20, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

43. On or about February 23, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

44. The next day, on or about February 23, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

45. On or about February 24, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

46. The next day, on or about February 24, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook.

47. On or about February 25, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery began pounding on Mr. Alexander's door so hard he was sure that they were going to break in.

48. Mr. Alexander went to his closet and took out his shotgun, which was registered to him and completely legal ab nd opened the front door.

49. At no time did Mr. Alexander point the shot gun at the agents of Blackhawk Recovery.

50. The agents of Blackhawk Recovery then filed a false police report, accusing Mr. Alexander

of pointing the gun at them.

51. Mr. Alexander was arrested and spent the night in jail as a result of the false police report.

52. The four year felony charge was dismissed.

### COUNT I – Fair Debt Collection Practices Act (Blackhawk Recovery)

53. Mr. Alexander incorporates the preceding allegations by reference.

54. At all relevant times Blackhawk Recovery – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

55. Blackhawk Recovery is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

56. Blackhawk Recovery's foregoing acts in attempting to collect this alleged debt against Mr. Alexander constitute violations of the FDCPA.

57. Mr. Alexander has suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code (Blackhawk Recovery)

58. Mr. Alexander incorporates the preceding allegations by reference.

59. Blackhawk Recovery is a "collection agency" as that term is defined in the Michigan Occupational Code, M.C.L. § 339.901(b).

60. Mr. Alexander is a debtor as that term is defined in M.C.L. § 339.901(f).

61. Blackhawk Recovery's foregoing acts in attempting to collect this alleged debt against Mr. Alexander constitute violations of the Occupational Code.

62. Mr. Alexander has suffered damages as a result of these violations of the Michigan Occupational Code.

**Demand for Jury Trial**

63.    Plaintiff demands trial by jury in this action.

**Demand For Judgment for Relief**

*ACCORDINGLY, Mr. Alexander requests that the Court:*

*a.    Assume jurisdiction over all claims;.*

*b.    Award actual damages.*

*c.    Award statutory damages.*

*d.    Award punitive damages.*

*e.    Award statutory costs and attorney fees.*

        Respectfully Submitted,

        ADAM G. TAUB & ASSOCIATES
        CONSUMER LAW GROUP, PLC

        By:    s/ Adam G. Taub
                Adam G. Taub (P48703)
                Attorney for Tommy Alexander
                18930 West 10 Mile Rd. Suite 2500
                Southfield, MI 48075
                Phone:  (248) 746-3790
                Email:   adamgtaub@clgplc.net

Dated:  October 26, 2009