UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TOMMY ALEXANDER,

Plaintiff,

-vs-

Case No. 09-14201
Hon. George Caram Steeh

BLACKHAWK RECOVERY AND INVESTIGATIONS, LLC,

Defendant.

**Plaintiff's Response to Defendant's Motion for Summary Judgment**

Plaintiff, TOMMY ALEXANDER, by his attorney, responds to DEFENDANT'S MOTION FOR SUMMARY JUDGMENT by stating that the Defendant is indeed a debt collector as that term is defined in the Fair Debt Collection Practices Act, 15 U.S.C. §1692? and for this reason, fully supported in Plaintiff's Brief in Opposition, Plaintiff asks this Court to deny the Defendant's Motion for Summary Judgment, with prejudice, and award costs and fees to the Plaintiff.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By: s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Plaintiff
18930 West 10 Mile Rd. Suite 2500
Southfield, MI 48075
(248) 746-3790
adamgtaub@clgplc.net

Dated: June 29, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TOMMY ALEXANDER,

Plaintiff,

-vs-

Case No. 09-14201
Hon. George Caram Steeh

BLACKHAWK RECOVERY AND INVESTIGATIONS, LLC,

Defendant.

**Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment**

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By: s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Plaintiff
18930 West 10 Mile Rd. Suite 2500
Southfield, MI 48075
(248) 746-3790
adamgtaub@clgplc.net

Dated: June 29, 2010

**ISSUE PRESENTED TO THE COURT**

Is the Defendant a "debt collector" as that term is defined in the Fair Debt Collection Practices Act, 15 U.S.C. §1692?

Plaintiff answers, "Yes."

Defendant answers, "No."

Facts and Background of the Case[1]

On February 4, 2009, representatives of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and informed the Plaintiff that they were there to recover a 2006 Chevy Blazer. Mr. Alexander explained that the Blazer was not in Michigan, but rather in Kentucky, where his son was attending college. Blackhawk Recovery demanded that the Plaintiff pay $2,700.00 immediately directly to the representatives of Blackhawk Recovery to be forwarded to Drive Financial. In spite of this attempt to collect money from the Plaintiff, Plaintiff never received any written correspondence from Blackhawk Recovery and, upon information and belief, Blackhawk Recovery did not send any notice pursuant to 15 U.S.C. § 1692g. In addition, Blackhawk Recovery did not comply with 15 U.S.C. § 1692e(11). Plaintiff told the representatives of Blackhawk Recovery that he would provide them with an address in Kentucky where the vehicle was located; in response to this, Blackhawk Recovery stated, "We know it's here." At that point, the representatives of Blackhawk Recovery left Plaintiff's property.

The next day, February 5th, different representatives of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and informed the Plaintiff that they were there to recover a 2006 Chevy Blazer. Plaintiff told the different representatives of Blackhawk Recovery that the 2006 Chevy Blazer was in Kentucky and offered to provide an address; the representatives of Blackhawk Recovery left Plaintiff's property.

On February 6, 2009 at approximately 7:00 am, the same representatives of Blackhawk Recovery that showed up two days earlier entered on to Plaintiff's property and began banging on

[1] All of the facts set forth herein are supported by the pleadings as well as the Plaintiff's deposition attached as Exhibit A.

Plaintiff's front door so loudly and forcefully that the Plaintiff was sure that his neighbors would be awakened. The representatives of Blackhawk Recovery were pounding on the door so loudly that it was shaking the frame of the door and Plaintiff believed that someone was trying to break the door down. Plaintiff answered the door and again informed Blachhawk Recovery that the vehicle was in Kentucky. In response, the agent of Blackhawk Recovery stated, "We know it's here. If I have to get into the garage, I know how to get into the garage."

Later, on the same day, Plaintiff came out of his home to find the agents of Blackhawk Recovery trying to break into his garage. Having been discovered breaking into the garage, the agent of Blackhawk Recovery ran to the truck he arrived in and left the property. Mr. Alexander followed the truck and called the Inkster police department.

On February 9, 2009 at approximately 8:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. These two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace. When Plaintiff came to get the door, he witnessed one of the agents from Blackhawk Recovery reaching through his mail slot and trying to grab the mail from inside and pull it out the door. One of the agents named, Lanny, yelled, "Tommy Alexander, I know you live here from your mail information." Plaintiff told the employees of Blackhawk Recovery that they were. In response, the representative of Blackhawk Recovery said, "Fuck you. We know the car's in your garage."

The next day, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

The next day, on February 11, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

The next day, on February 12, 2009 at approximately 9:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

The next day, on February 13, 2009 at approximately 8:00 am, once again, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

On February 17, 2009 at approximately 10:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

On February 19, 2009 at approximately 8:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

On February 20, 2009 at approximately 8:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house

shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

On or about February 23, 2009 at approximately 8:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

On February 24, 2009 at approximately 8:00 am, two agents of Blackhawk Recovery showed up at Plaintiff's home, entered onto his property and began pounding so loud that the house shook. The two agents of Blackhawk Recovery were yelling outside on Plaintiff's front porch and disturbing the peace.

On February 25, 2009 at approximately 8:00 am, the two agents of Blackhawk Recovery began pounding on Mr. Alexander's door so hard he was sure that they were going to break down the door. Mr. Alexander went to his closet and took out his shotgun, which was registered to him and completely legal and opened the front door. At no time did Mr. Alexander point the shot gun at the agents of Blackhawk Recovery.

The agents of Blackhawk Recovery then filed a false police report, accusing Mr. Alexander of pointing the gun at them. Mr. Alexander was arrested and spent the night in jail as a result of the false police report. The four year felony charge was dismissed.

Law and Argument

A. Standard of Review

The standard of review of the district court's grant of summary judgment is de novo.[2]

[2] *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3] In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party.[4] The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[5]

When making a determination under Rule 12(b)(6), a court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true.[6] The issue is not whether the Plaintiff will prevail or not. The issue is whether the Plaintiff is entitled to offer evidence in support of his claims.

B. The Defendant is a "debt collector" as that term is defined in the Fair Debt Collection Practices Act, 15 U.S.C. §1692

The FDCPA defines a "debt collector" as –

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. ***For the purpose of section 1692f (6) of this title, such term also includes any***

[3] Fed. R. Civ. P. 56(c)

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[6] *Meador v. Cabinet For Human Resources*, 902 F.2d 474, 475 (6th Cir.), cert. denied, 111 S.Ct. 182 (1990); *Dana Corp. v. Blue Cross & Blue Shield*, 900 F.2d 882, 885 (6th Cir.1990).

> ***person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests***.[7]

Generally, an enforcer of security interests such as the Defendant falls outside this definition, except under 15 U.S.C. §1692f(6), which reads, in relevant part,

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * * * *
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if --
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.[8]

A repossession company is covered by 1692f(6) and not other FDCPA provisions – this construction is necessary to give effect to the third sentence of 1692a(6).[9]

In this matter, the Defendant is clearly a "debt collector" under 15 U.S.C. §1692f(6) given the facts and circumstances set forth in this matter, where the Defendant repeatedly threatened to repossess the vehicle in question with no present right to take it, culminating in a false police report by Defendant and a night in jail for the Plaintiff.

To determine whether a debt collector had a present right to possession of the property under § 1692f(6), courts have looked to the applicable state self-help repossession statute.[10] In other

---

[7] 15 U.S.C. §1692a(6) (emphasis supplied)

[8] 15 U.S.C. §1692f(6)

[9] *Jordan v Kent Recovery Servs., Inc.*, 731 F. Supp. 652 (D.Del. 1990).

[10] See, e.g., *Purkett v Key Bank USA, N.A.*, 455 U.C.C. Rep. Serv. 2d 1201 (N.D. Ill. 2001) (citing *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F.Supp. 543, 546 (D.Conn.1994))

words, if the debt collector violated the self-help repossession statute, by breach of the peace or otherwise, then the collector had no present right to possession of the property under § 1692f(6).[11]

In Michigan, repossession companies may engage in non-judicial, self-help measures only under certain circumstances set forth in M.C.L. §440.9609 which regulates a secured party's right to take possession after default:

> (1) After default, a secured party may do 1 or more of the following:
> (a) Take possession of the collateral.
>
> * * * * *
>
> (2) A secured party may proceed under subsection (1) either pursuant to judicial process, or without judicial process if it proceeds without breach of the peace.[12]

Under this rule, companies such as the Defendant may engage in repossession measures only to the extent that they do not breach the peace. Once these companies have breached the peace, the present right to proceed with repossession does not exist.

Case law supports the notion that repossession companies fall within the scope of the FDCPA if they engage in self-help repossession without a present right to do so.[13] Though there is sparse authority, the case law is consistent: where the repossession company breaches the peace, it loses its right to repossess and if it continues or threatens to continue under these circumstances,

---

[attached as Exhibit B].

[11] *Fleming-Dudly v Legal Investigations, Inc.*, 2007 WL 952026 (N.D. Ill 2007) [attached as Exhibit C].

[12] M.C.L. §440.9609

[13] *Vitale v First Fidelity Leasing Group,* 35 F.Supp 2d. 78, 81 (D. Conn 1988). *See also Clark*, 889 F. Supp. 543, 546 (D. Conn. 1994) (defendant's repossession constituted an unfair debt collection practice in violation of the FDCPA under 15 U.S.C. § 1692f(6))

it comes under the ambit of the FDCPA. In *Purkett v. Key Bank USA, N.A.*,[14] when a repossession company broke into locked garage to repossess a car, it breached the peace and was in violation of the FDCPA because it had no present right to repossess. In *Pflueger v. Auto Fin Group, Inc.*,[15] summary judgment was denied based on factual issues as to whether the breach of the peace was sufficient to deprive the repossessor of its present right to possession at the time of the threatened repossession violating 1692f(6)(A). In *Saice v. MidAmerica Bank*,[16] since the issue of whether the current right of possession to collateral under 1692f(6) is determined by applicable state law, the defendant repossessor's motion for summary judgment was denied where material facts remained unresolved, i.e., whether the repossession occurred without a breach of the peace. In *Clark v. Auto Recovery Bureau, Inc.*,[17] a breach of the peace in the course of a repossession violates the FDCPA because a repossessor loses it right to possession under the Connecticut UCC if obtaining possession would result is a breach of the peace. In *Fulton v Anchor Sav. Bank*,[18] the dismissal of the FDCPA claim arising from automobile repossession was reversed because genuine issues of material fact existed as to bank's present right of possession.

C. Analysis

In the instant matter, the Defendant continuously threatened to repossess the subject vehicle over a three week period, continuously breached the peace and finally, making a false police report

---

[14] 45 U.C.C. Rep. Serv. 2d 1201 (N.D. Ill. 2001). [attached as Exhibit B].

[15] 1999 WL 33740813 (C.D. Cal. Apr.26, 1999). [attached as Exhibit D].

[16] 1999 WL 33911356 (D. Minn. Sept. 30, 1999). [attached as Exhibit E].

[17] 889 F. Supp. 543 (D. Conn. 1994).

[18] 452 S.E.2d 208 (Ga. Ct. App. 1994). [attached as Exhibit F].

and causing the Plaintiff to spend the night in jail. Clearly, under these circumstances, the Defendant had no present right to take possession of the vehicle at any time. As such, the Defendant is covered by the FDCPA.

Conclusion

Based on the foregoing argument, the Defendant's Motion for Summary Judgment should be denied with prejudice and the Plaintiff should be awarded costs to be determined by the court.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By: s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Tommy Alexander
18930 West 10 Mile Rd. Suite 2500
Southfield, MI 48075
Phone: (248) 746-3790
Email: adamgtaub@clgplc.net

Dated: June 29, 2010

**Certificate of Service**

My name is Adam G. Taub and I am an officer of this Court. On June 29, 2010, I served all parties entitled to notice with the foregoing document by regular mail to each record address.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By: s/ Adam G. Taub
Adam G. Taub (P48703)
Attorney for Tommy Alexander
18930 West 10 Mile Rd. Suite 2500
Southfield, MI 48075
Phone: (248) 746-3790
Email: adamgtaub@clgplc.net

Dated: June 29, 2010