UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOMMY ALEXANDER,

        Plaintiff,

                                         Case No. 09-14201
vs.                                     HON. GEORGE CARAM STEEH


BLACKHAWK RECOVERY and
INVESTIGATION, L.L.C.,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff, Tommy Alexander, brings this action pursuant to the Fair Debt Collection Practices Act, (FDCPA),15 U.S.C. § 1692 *et seq.,* alleging that defendant, Blackhawk Recovery and Investigation, LLC (Blackhawk), violated the FDCPA in its attempts to repossess a 2006 Chevrolet Trail Blazer from Alexander.  Additionally, Alexander brings a state law claim under the Michigan Occupational Code, Mɪᴄʜ. Cᴏᴍᴘ. Lᴀᴡs § 339.901 *et seq.*  On June 3, 2010, Blackhawk filed a motion for summary judgment[1] arguing that Alexander's claims under the FDCPA do not state a cause of action because Blackhawk is not a "debt collector" as that term is defined under the FDCPA.  A hearing on Blackhawk's motion for summary judgment was held on August 4, 2010.

_____

[1] While Blackhawk entitles its motion as a 'motion for summary judgment,' in the body of its brief, it indicates that the court should dismiss this action pursuant to Rule 12(b)(6) or, alternatively, Rule 56 of the Federal Rules of Civil Procedure.  *See* Mot. for Summ. J. at 2.

## II. FACTUAL BACKGROUND

In his October 26, 2009 complaint, Alexander alleges that on numerous occasions Blackhawk representatives went to his home in an attempt to recover a 2006 Chevrolet Blazer. Alexander argues that Blackhawk's representatives committed various violations of the FDCPA by arriving at his residence at unreasonable hours, disturbing the peace by pounding loudly on his door, using offensive language, demanding money, and on one occasion, filing a false police report resulting in the arrest and detention of Alexander.

Specifically, Alexander claims that on February 4, 2009, Blackhawk representatives arrived at his home seeking to recover the Blazer.[2] The representatives repeatedly banged on the front door, awakening Alexander's wife.[3] By the time she answered the front door, nobody was there. However, she did see a truck parked near the house that had the words 'Blackhawk Recovery' printed on it. Blackhawk representatives returned to Alexander's home again the next day, this time they demanded he immediately pay them $2,700.00.

Blackhawk representatives returned to Alexander's home on at least fourteen separate occasions, usually between 8:00 a.m. and 9:00 a.m.[4] seeking to repossess the Chevy Blazer. On each occasion, Blackhawk representatives would yell and pound at Alexander's door. They did this despite the fact that Alexander informed them that the vehicle was not in Michigan, but in Kentucky, where his son was living. The

---

[2] Blackhawk claims that it did not receive the possession order from Drive Financial Services until February 12, 2009. *See* Mot. for Summ. J., Ex. B.

[3] Alexander was not at home.

[4] On one occasion they came to the home at 9:00 p.m.

representatives apparently did not believe Alexander, responding with profane language and stating, "[w]e know its here." On one occasion, Alexander discovered Blackhawk representatives attempting to break into his garage, but they ran away upon realizing they had been detected. On another occasion, Alexander told the representatives to get off his property, and one of the representatives responded with profane language. On February 25, 2009, Alexander believed that the representatives were going to break into his home because they were banging so loudly on the front door causing his home to shake. He retrieved a shotgun from his closet and answered the front door. Alexander claims that he never pointed the shotgun at the Blackhawk representatives. However, Blackhawk maintains that he did point the shotgun at them, and that the information they provided to the police was true. Alexander was charged with a felony and spent the night in the local jail. The charges were later dismissed.

## III.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under the Supreme Court's recent articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1964-65) (citations and

quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* (citing *Bell Atlantic*, 127 S. Ct. at 1965).

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV.  ANALYSIS

This action is premised on the presence of federal question jurisdiction. Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936)).

In his complaint, Alexander alleges that Blackhawk violated §§ 1692a, 1692e and 1692g of the FDCPA. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

consistent State action debt collection abuses." *Montgomery v. Huntington Bank*, 346 F.

3d 693, 698 (6th Cir. 2003) (citing 15 U.S.C. § 1692(e)). Liability under the Act can only

attach to those defendants who meet the definition of "debt collector." Specifically, debt

collector is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the
> mails in any business the principal purpose of which is the collection of any
> debts, or who regularly collects or attempts to collect, directly or indirectly,
> debts owed or due or asserted to be owed or due another. Notwithstanding
> the exclusion provided by the clause (F) of the last sentence of this
> paragraph, the term includes any creditor who, in the process of collecting his
> own debts, uses any name other than his own which would indicate that a
> third person is collecting or attempting to collect such debts. For the purpose
> of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person
> who uses any instrumentality of interstate commerce or the mails in any
> business the principal purpose of which is the enforcement of security
> interests.

15 U.S.C. § 1692a(6). Section 1692f(6) prohibits the following:

> Taking or threatening to take any nonjudicial action to effect dispossession
> or disablement of property if–
>
> (A) there is no present right to possession of the property claimed as
> collateral through an enforceable security interest; (B) there is no present
> intention to take possession of the property; (C) the property is exempt by
> law from such dispossession or disablement.

15 U.S.C. § 1692f(6). In *Montgomery v. Huntington Bank,* the Sixth Circuit Court of

Appeals found that Silver Shadow, the defendant-repossession agency, was not a debt

collector under the express terms of the FDCPA. 346 F. 3d at 699-701. After the

repossession agency's employees repossessed a BMW that was parked in the plaintiff's

garage, the *Montgomery* plaintiff brought suit alleging violations of § 1692d and § 1692e

of the FDCPA. *Id.* at 698. In upholding the district court's dismissal of the complaint, the

*Montgomery* court noted that:

> [T]he evil sought to be prevented by proscribing the conduct of debt

collectors, namely, harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated in the situation of a repossession agency that enforces a present right to a security interest because in the latter context, an enforcer of a security interest with a present right to a piece of secured property attempts to retrieve something that which another person possesses but which the holder of the security interest still owns.

*Id.* at 700.   The court found that "except for purposes of § 1692f(6), an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the FDCPA." *Id.* at 700-01.   Because Silver Shadow did not qualify as a debt collector under § 1692d and §1692e, and the plaintiff had not alleged any violation of § 1692f(6), the *Montgomery* court upheld the district court's dismissal of the plaintiff's claims against the repossession agency.   *Id.* at 701.   Therefore, under the express terms of the statute, a repossession agency such as Blackhawk falls outside the ambit of the FDCPA, except for purposes of § 1692f(6).   *Montgomery*, 346 F. 3d at 700; *see also, Pflueger v. Auto Finance Group, Inc.*, no. cv-97-9499, 1999 WL 33740813, *3 (C.D. Cal. April 26, 1999); *Purkett v. Key Bank USA, N.A.*, no. 01-C-162, 2001 WL 503050, *2 (N.D. Ill. May 10, 2001).

In Alexander's response to Blackhawk's motion for summary judgment, Alexander concedes that Blackhawk is not a debt collector under §§ 1692a, 1692e and 1692g of the FDCPA, but argues that dismissal is nonetheless inappropriate because Blackhawk "is clearly a debt collector under [] § 1692f(6) given the facts and circumstances set forth in this matter."   Plaintiff relies on several decisions that are cited as authority in the interpretation of this statute.   *See  Purkett v. Key Bank USA, N.A.*, no. 01-c-162, 2001 WL 503050 (N.D. Ill. May 10, 2001); *Fleming-Dudley,* no. 05-c-4648, 2007 WL 952026 (N.D. Ill. March 22, 2007); *Pflueger v. Auto Finance Group, Inc.*, no. cv-97-9499, 1999 WL

33740813 (C.D. Cal. April 26, 1999).

Courts presented with the issue of determining whether a repossession agency has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue. *See Purkett*, 2001 WL 503050, at *2-3; *Fleming-Dudley*, 2007 WL 952026, at *5. The plaintiff in *Purkett* took out a loan to finance the purchase of a car. *Id.* at *1. Within three years the plaintiff had fallen behind on his payments. *Id.* A repossession agency was hired by the bank which bought plaintiff's loan. *Id.* One night an employee of the repossession agency broke into the plaintiff's garage and repossessed the car without notice to the plaintiff. *Id.* In concluding that the plaintiff had stated a claim under § 1692f(6), the *Purkett* court looked to Illinois state law to conclude that the plaintiff had stated sufficient facts to allege that a breach of the peace occurred when the defendant broke into the plaintiff's garage, thus, obviating defendant's right to take possession of the car by breaking into the garage. *Id.*

Similarly, in *Fleming-Dudley*, the court concluded that the plaintiffs had stated a claim under §1692f(6) when the defendant repossession agency's employee impersonated a police officer in order to convince the plaintiffs to turn over keys to a car the agency was hired to repossess. *Fleming-Dudley*, 2007 WL 952026, at *5-8. The *Fleming-Dudley* court relied on the allegations in the complaint to find that the plaintiffs had stated a claim for breach of the peace, and therefore that the defendant did not have a present right of possession. The plaintiffs in *Fleming-Dudley* alleged that the employee banged on the door and yelled, "'[t]his is Legal Investigations, I am Officer White, come to the door!'or words to that effect[]" and threatened that he would have the plaintiffs arrested for grand

theft auto.  *Id.*  The *Fleming-Dudley* court rejected the defendant's argument, similar to the one Blackhawk asserts here, that the court should deny the plaintiffs an opportunity to proceed on a claim for liability under § 1692f(6) because the complaint did not expressly identify that subsection, but only identified § 1692c, § 1692d, and § 1692c(4), § 1692e(5) and § 1692e(7).  The court found that "such express statutory designation is not required because the facts stated in the operative complaint give fair notice of a potential Section 1692f(6) claim."  *Id.* at *5 (citing *Higgs v. Carver*, 286 F. 3d 437, 439 (7th Cir. 2002); *see also, Pflueger*, 1999 WL 33740813, at *5-6 (finding that absence of citation to §1692f(6) insufficient to grant summary judgment where plaintiff alleged sufficient facts demonstrating that a breach of the peace occurred when the agency's employee was throwing objects at the home and shouting obscenities in an effort to repossess a car.)

Blackhawk counters that none of the decisions relied upon by plaintiff are mandatory authority.  While this is true, the court finds these decisions persuasive.  Defendant relies on the fact that the plaintiff in *Montgomery*, similar to Alexander, did not specifically allege a violation of §1692f(6)*,* but only cited to provisions of the FDCPA that did not apply to the defendant repossession agency.   Specifically, alleging violations of § 1692d and § 1692e, the *Montgomery* plaintiff argued that the defendant repossessed the vehicle while it was parked in the plaintiff's locked garage, damaging his driveway and two other cars he owned in the process.  *See Montgomery*, 346 F. 3d at 695-96.  Blackhawk reasons that since the *Montgomery* court did not conclude that these allegations supported a claim under § 1692f(6), Alexander likewise has failed to set forth factual allegations in support of a claim under § 1692f(6).  However, the *Montgomery* court specifically cited to *Purkett*, 2001 WL 503050, at *2-3, when it stated "[w]e leave for another day the question of whether

Montgomery's allegations may have stated a claim under § 15 U.S.C. § 1692f(6)."

*Montgomery*, 346 F. 3d at 701, n. 8. The Sixth Circuit explicitly found that the *Montgomery* complaint failed to aver facts sufficiently specific enough to provide notice of a claimed violation of §1692(f)(6), nor were such claimed violations presented to or ruled upon by the lower court in order to preserve the issue for appeal. Therefore, a finding that plaintiff's allegations state a claim under § 1692f(6), even if that section is not specifically identified in the complaint is not precluded in this circuit. Thus, the court must determine whether a question of fact remains as to whether Blackhawk violated §1692f(6) because it had no present right to possession of the Chevy Blazer it's agents acts constituted breaches of the peace.

Michigan's self-help repossession statute provides that, after a default, a secured party may take possession of collateral without judicial process if it proceeds without breach of the peace. *See* MICH. COMP. LAWS § 440.9609(1)-(2). The notes to this section provide that:

> [T]his section does not define or explain the conduct that will constitute breach of the peace, leaving that matter for continuing development by the courts. In considering whether a secured party has engaged in a breach of the peace, however, courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral."

*Id.* The court cannot locate any case law outside of the criminal context, and the parties have cited to none, which defines breach of the peace under circumstances of attempted repossession of collateral. A breach of the peace has been defined as "a public offense done by violence, or one causing or likely to cause an immediate disturbance of the peace." *Saice v. MidAmerica Bank*, no. civ. 98-2396, 1999 WL 33911356, *2 (D. Minn. Sept. 30, 1999) (citing Restatement (Second) of Torts § 116). In *Pflueger*, the court was likewise

-10-

faced with a lack of state case or statutory law defining a breach of the peace. *Pflueger*, 1999 WL 33740813, at *6. The *Plueger* court relied on the Eighth Circuit Court of Appeals conclusion that repossession agencies may breach the peace when acts are committed which "tend to provoke violence." *Id.* (citing *Williams v. Ford Motor Co.*, 674 F. 2d 717, 719-20 (8th Cir. 1982). The *Pflueger* court concluded that questions of fact remained as to whether the defendant committed a breach of the peace when its agents threw rocks at the plaintiff's home and shouted obscenities in attempting to repossess a vehicle. *Id.*

Alexander has met his burden of coming forward with specific facts demonstrating a question of fact remains as to whether Blackhawk breached the peace, and thereby lost its right to possession of the vehicle on the dates of the claimed disturbances. At his deposition, Alexander testified that on several occasions, Blackhawk went to his residence at unreasonable hours, pounded loudly on his door while yelling and at times used offensive language. On at least one occasion, Alexander witnessed Blackhawk employees trying to break into his garage. These incidents were likely to lead to an immediate public disturbance or provoke violence. Further, the type of conduct described by Alexander, if true, is the type of abusive practice Congress sought to prevent in enacting FDCPA and specifically §1692f(6). Lastly, the fact that Alexander did not cite to §1692f(6) in his complaint is of no consequence as he alleged facts sufficient to put Blackhawk on notice that he was bringing a claim under that section.

Alexander also filed a claim under Michigan's Occupational Code, MICH. COMP. LAWS § 339.901 alleging that Blackhawk violated several of its provisions. The only argument raised by Blackhawk is that Alexander's state law claim should be dismissed because there

is no basis for federal subject matter jurisdiction. As this court has found that federal subject matter jurisdiction exists, Blackhawk's argument that plaintiff's state law claim should be dismissed has no merit. In any event, it appears that Alexander has stated a claim under Michigan's Occupational Code, specifically § 339.918 because Blackhawk failed to provide the requisite written communication to Alexander. *See* Mich. Comp. Laws § 339.918(1). Specifically, Blackhawk was required to send Alexander written correspondence within five days of its first contact with him. *Id.* The correspondence was to include information as to the amount of the debt owed, the date the communication was sent to the debtor, the name of the creditor to whom the debt is owed, and that the consumer has thirty days to dispute the debt, otherwise the debt is assumed to be valid. *Id.* Therefore, Alexander has stated a claim under the Michigan Occupational Code.

<u>V. CONCLUSION</u>

Accordingly,

Defendant's Motion for Summary Judgment is DENIED.

SO ORDERED.

Dated: August 16, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 16, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk